Trimont Dredging
Company
vs.
Rhode Island Hospital
Trust Company, et al.
Eq. No. 11363.

DECISION.

July 1, 1932.

WALSH, J. On February 16, 1931, Rhoda G. Packard sold to the Trimont Dredging Company all of the capital stock of the J. S. Packard Dredging Company. The sale was evidenced by a written agreement, Complainant's Exhibit D.

The purchase price was $265,000. Of this amount $150,000 was paid at the time to the seller's attorney and $115,000 was deposited with the Rhode Island Hospital Trust Company. It was agreed that there should be paid to the buyer, out of this sum of $115,000, an amount equivalent to all of the "debts" or "indebtedness" of the Packard Company as of noon on February 16, 1931, and that the balance of said sum should be paid over to the seller. It was further agreed that the seller would pay such judgments as might be rendered against the Packard Company in any action pending against it in any court on February 16, 1931.

On March 5, 1931, the seller and the buyer agreed that the debts of the Packard Company as of noon on February 16, 1931, would be found to amount to at least $37,500, and by mutual agreement each of the parties received from the Trust Company $37,500 out of the $115,000 on deposit. This appears from the written agreement of March 5, 1931, between Miss Packard and Mr. Burrage, Complainant's Exhibit B and Respondents' Exhibit 1.

On May 26, 1931, the buyer and the seller agreed in writing (Complainant's Exhibit C) that the debts of the Packard Company at noon on February 16, 1931, amounted to $52,202.68.

Counsel for the complainant urged the fact that in the recitals in the agreement the amount of the Packard Company's indebtedness was said to be "*at least $52,202.68.*"

The agreement of May 26, 1931, further provided that the buyer might forthwith withdraw from the fund in the Trust Company $14,702.68, which was agreed to be the amount necessary to pay the buyer the full amount of the indebtedness of the Packard Company as of noon on February 16, 1931; (namely, $52,202.68, the sum of $37,500 and $14,702.68). (See lines 5, 6 and 7 on page 4 of Complainant's Exhibit C.) And the agreement further provided that the seller might withdraw $15,297.32. This amount was determined by a simple calculation of what amount should be drawn in order to leave on deposit the sum of $10,000.

It was further provided in the agreement of May 26 that the parties should forthwith order and direct the Trust Company to pay the $10,000 to the seller immediately after February 16,

1932, if the judgment in the Clattenberg case should then have been paid by the seller, and if no actions other than the Clattenberg action and the Phipany action should have been discovered by that time to have been pending against the Packard Company at noon on February 16, 1931, and be still so pending on February 16, 1932, and if no debts of the Packard Company as of noon of February 16, 1931, not found by the auditors, should have been discovered by February 16, 1932.

The agreement of May 26, 1931, differs in effect from the agreement of February 16, 1931, principally in three respects, (1) in showing that the amount of the indebtedness, unascertained on the earlier date, had been ascertained approximately on the later date; (2) in making the deposited fund secure the payment of the *judgments* which the seller had agreed to pay, instead of merely the *debts* as of February 16, 1931, and (3) in fixing a time, namely, immediately after February 16, 1932, for the payment of the balance of the deposit to the seller.

The only question for determination is whether the three so-called accounts mentioned in paragraph 19 of the bill of complaint were debts of the J. S. Packard Dredging Company as of noon on February 16, 1931. The complainant admitted in Court that one of these, that of the Thermoid Rubber Company, was included in the bill of complaint by mistake. So that we have for con sideration only the bill of the D. M. Dillon Steam Boiler Works and the bill of N. W. Thompson, Esq.

A debt is a liquidated demand or a sum of money due by certain and express agreement; it is a fixed or certain obligation to pay money or other valuable thing in the present or in the future. A sum of money payable upon a contingency is not a debt and does not become a debt until the contingency has happened. The words "debts" and "liabilities" are not syn-

onymous. "Liabilities" is of broader significance than "debts." "Liabilities" is responsibility of one bound by law and justice to do something which may be enforced by action. "Liabilities" includes "debts" and "indebtedness" and, in addition, existing obligations which may or may not in the future develop into an indebtedness.

Now the claim of the D. M. Dillon Steam Boiler Works is based on two contracts, one, dated December 9, 1930, for a boiler and two tanks, and the other, dated January 8, 1931, for an oil tank. (Complainant's Exhibits G and H.) Each of these contracts provided for payment as follows: one-third when the material ordered was ready for shipment; one-third when it was installed in the vessel, and the balance thirty days after the second payment.

None of the material ordered from the Dillon Boiler Works was ready for shipment until after February 16, 1931. This appeared both from Mr. White's testimony and from Mr. Burrage's. It is our understanding that the complainant does not contend that any of this material was ready for delivery until after February 16, 1931.

These Dillon contracts then are exactly like the contracts for alkali mentioned in *Wing & Evans* v. *Slater*, 19 R. I. 597. The contracts were made before February 16, 1931, but the goods were not ready for delivery until after that date; no payments were due until the goods were ready for delivery, and therefore there was no debt existing on February 16, 1931.

We must therefore deny petitioner relief on the Dillon contracts.

The claim of N. W. Thompson, Esq., is for legal services rendered to the Packard Dredging Company. Mr. Thompson was retained before the negotiations for the transfer of stock to the Trimont Dredging Company. Mr. Thompson had received his retainer from the old company. Mr. Thompson

did not render his bill for services until September 8, 1931, but Miss Packard knew of the situation and, as a reasonable person, must be presumed to have intended that Mr. Thompson should act for the old company until the litigation terminated. The preponderance of evidence is to the effect that the Packard Company had agreed with the Bonding Company to defend this suit. As a natural consequence of such an undertaking, the Packard Company assumed the debt of paying its attorney the reasonable value of his services.

We must therefore find that the Packard Company should pay to N. W. Thompson, Esq., his bill of September 8, 1931. A decree may be drawn in accordance with the terms of this decision.

For complainant: J. Raymond Dubee.

For respondents: M. D. Champlin, J. C. Knowles, Tillinghast & Collins.